IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 11, 2001

**STATE OF TENNESSEE v. TIMMY HERNDON**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 98-06543     James C. Beasley, Jr., Judge**

———————————————

**No. W2000-01228-CCA-MR3-CD  - Filed July 20, 2001**

———————————————

The defendant was convicted of aggravated robbery, a Class B felony.  Tenn. Code Ann. § 39-13-402.  The defendant was sentenced to a fifteen-year sentence at the Tennessee Department of Correction as a Range II offender.  The defendant challenges the sufficiency of the evidence to support his conviction.  After a thorough review of the record, we conclude that the evidence presented at the defendant's trial was sufficient to support his conviction.  The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOE G. RILEY and ROBERT W. WEDEMEYER, JJ., joined.

A C Wharton, Jr., District Public Defender, and Garland Ergüden, Assistant Public Defender, for the appellant, Timmy Herndon.

Paul G. Summers, Attorney General and Reporter; Mark E. Davidson, Assistant Attorney General; William L. Gibbons, District Attorney General; and Jennifer Nichols, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On May 26, 1998, a Shelby County Grand Jury returned a one count indictment against the defendant, Timmy Herndon, for aggravated robbery.  The defendant was tried by a Shelby County jury for the indicted offense and found guilty on September 16, 1999.  On February 17, 2000, the defendant was sentenced to a fifteen-year sentence in the Tennessee Department of Correction as a Range II offender.  On May 23, 2000, the defendant filed a notice of appeal.  This appeal followed.

## Facts

As we are asked by the defendant to review the sufficiency of the evidence, we restate the testimony in a light most favorable to the State. In January 1998, the victim in the instant case worked for a charter bus service in Houston, Texas. On January 21, 1998, the victim drove a group of people to Memphis from Houston. After the group checked into their motel rooms in Memphis, the victim drove the group to a local church. After dropping the group off at the church, the driver drove back to the motel where he was staying. On his way back to the motel, the victim saw Terri Murrell standing on a street corner working as a prostitute. The victim stopped his bus, picked up Murrell, and took her back to his room where the two consummated their illegal business transaction. The victim then took Murrell back to the area where he picked her up.

Later the same evening, the victim was standing outside his bus in a restaurant parking lot waiting for the group of people in his chartered group to finish eating dinner. While outside waiting, the victim was approached by Murrell, who was driving a vehicle owned by the defendant. The two made arrangements to meet back at the victim's motel room after the victim dropped his passengers off at their motel.

Murrell arrived at the victim's motel room at approximately 10:30 p.m. While Murrell went up to the victim's room, the defendant and Murrell's boyfriend, Antonio Williams, waited in the defendant's car in the motel parking lot. After being let into the room by the victim, Murrell left the room telling the victim that she was going to get some sodas and ice. While outside, Murrell went to the car where the defendant and Williams waited and had a brief conversation with Williams. Murrell then returned to the victim's motel room and told the victim that the ice machine was broken.

Shortly after Murrell returned to the motel room, the victim went into the bathroom and prepared to take a shower in preparation for the upcoming sexual activities with Murrell. While the victim was in the bathroom, Murrell took her clothes off. Meanwhile, in the motel parking lot, the defendant and Williams continued to wait for Murrell to return. While waiting for Murrell, Williams got out of the car to go up to the victim's room, telling the defendant that "he was going to see what the man had, [and] that he was going to steal something from him." Williams "asked" the defendant to accompany him up to the room. When the two got to the motel room, Murrell opened the door and let them into the room.

As the defendant and Williams entered the room, the victim came out of the bathroom. Williams pointed a gun at the victim and demanded that he go back into the bathroom. While the victim was in the bathroom, the defendant, Murrell, and Williams stole the victim's luggage, clothing, wallet, watch, pager, and shoes. The three then fled from the motel room in the defendant's car. The victim reported the crime immediately after the defendant, Murrell, and Williams fled.

The following evening two Memphis police officers saw the defendant and a woman sitting in the defendant's parked car outside of a Memphis nightclub. The officers stopped their car, got

out, and approached the defendant's car. While at the defendant's car, the officers asked the defendant and the woman for identification. The defendant reached into his pocket and pulled out two pieces of identification and gave them to the police officer. One of the pieces of identification was a state identification card and the other was a bank card with the victim's name on it. When the officer ran the names on the two pieces of identification, the officer was informed that the bank card with the victim's name on it had been stolen in a robbery the night before. The defendant, the woman in the vehicle with the defendant, and a third woman, who came out to the car while the police were running the defendant's identification, were all arrested. The two women arrested with the defendant were the defendant's girlfriend and Terri Murrell.

The two women were later released, while the defendant was held in police custody. The defendant was read his Miranda rights, but decided to waive his rights and talk to the detectives assigned to the case. After the defendant signed a rights waiver, detectives proceeded to question the defendant. The defendant confessed to being involved in the robbery and signed a confession. The defendant also told police who his accomplices were and took them to where Williams and Murrell were living. Williams and Murrell were subsequently arrested. Police searched the dwelling Williams and Murrell shared and recovered most of the items stolen from the victim. The defendant, Williams, and Murrell were all positively identified in a photo lineup by the victim.

On September 14, 1999, the defendant's trial began for aggravated robbery. The trial concluded on September 16, 1999, and the defendant was convicted by a jury of his peers. A fifteen-year sentence was imposed on the defendant on February 17, 2000.

**Analysis**

The defendant contends that the evidence introduced at trial was insufficient to support his conviction for aggravated robbery. We disagree.

A.  Standard of Review

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1,18 (Tenn. Crim. App.1996).

In determining the sufficiency of the evidence, this court does not reweigh nor reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn.1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable

and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. *Id.* In State v. Grace, the Tennessee Supreme Court stated, "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

B. Analysis

Prior to entering into our analysis, we turn our attention to the sections of the Tennessee Code dealing with aggravated robbery. The Tennessee Code Annotated sets forth that the elements of both sections 39-13-401 and 39-13-402 must be met for a conviction of aggravated robbery to stand. Tennessee Code Annotated sections 39-13-401 and 402 define aggravated robbery as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" and when "[a]ccomplished with a deadly weapon."

Using the above definition of aggravated robbery as a springboard into our analysis, we turn our attention to the evidence presented at trial which clearly established that there was a taking without the "effective consent" of the owner and, as such, a theft of property belonging to the victim occurred.[1] However, this is only one of the elements necessary to prove that an aggravated robbery occurred. The second fact that must be established is that the theft occurred "by violence or putting the person in fear." During the trial, the victim testified that when the defendant and Williams came into the motel room and Williams pointed a gun at him, he believed that Williams was going to shoot him and that he "was dead." The extreme fear that the victim testified to was corroborated by testimony given by the defendant. At trial, the defendant testified that he saw tears in the victim's eyes before Williams ordered the victim to go into the bathroom while continuing to point the gun at him. Evidence was sufficient to establish that the theft occurred while the victim was in fear. Finally, testimony from the victim, Murrell, and the defendant established that a gun was used during the crime. Based upon the testimony of the witnesses at trial, there was sufficient evidence for the jury to conclude that an aggravated robbery did occur.

---

[1] During the robbery, the defendant, Murrell, and Williams stole the victim's luggage, clothing, wallet, watch, pager, and shoes. The victim's bank card was recovered from the defendant at the time of the defendant's arrest, and most of the other property was recovered after Murrell and Williams were arrested and the room they shared was searched.

We address the defendant's contention that, because he possessed no weapon, he could not be convicted of aggravated robbery. In Tennessee, it is well settled that a person can be found criminally responsible for an offense committed by another if that person aided or attempted to aid in the commission of the offense while "[a]cting with intent to promote or assist in the commission of the offense, or to benefit in the proceeds or results of the offense." Tenn. Code. Ann. § 39-11-402(2). This court has made it clear that a culpable mental state less than intent will not suffice if a conviction is to be sustained under criminal responsibility. State v. Maxey, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994).

Turning our attention back to the facts of the instant case, the defendant testified that he knew that Williams was going to the victim's motel room to see what he could "steal" from the victim. The defendant also told police in his initial statement after being arrested that "Tony asked me to come up with him" and that after they got to the room "Tony asked me to get [the victim's] bag." Defendant admitted at trial that he saw Williams pull a handgun and order Booker into the bathroom. Defendant further admitted at trial that he thereafter picked up Booker's bag and fled. The evidence justified the jury finding the defendant guilty of criminal responsibility for aggravated robbery.

Prior to ending our analysis, we pause to briefly address the defendant's contention that he committed the aggravated robbery while under duress. The defendant testified at trial that he was forced to aid in the commission of the crime because Williams made threats against him and his mother. The defendant also testified that Williams commanded him to get out of the car and go up to the victim's motel room, and he claimed that he was "under [the] commanding authority" of Williams while committing the crime. As set forth above, the defendant told police officers that Williams asked him to go up to the victim's room with him and asked him to get the victim's bag. In the defendant's signed confession to officers at the Memphis Police Department, the defendant made no mention of threats to either him or his mother or that he was under Williams' commanding voice at the time of the crime. The weight and credibility of these two conflicting pieces of evidence are for the jury to decide. Obviously, the jury chose to disbelieve the defendant's defense of duress and to accredit the defendant's confession to police officers. This was the jury's prerogative.

## CONCLUSION

The judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

-5-